UNITED STATES BANKRUPTCY COURT
FOR THE
DISTRICT OF MASSACHUSETTS

~~~~~~~~~~~~~~~~~~~~~~~~~~

In re
**ANDRE T. RIDLEY,**                                            Chapter 13
   Debtor                                                   Case No. 08-17589-JNF

~~~~~~~~~~~~~~~~~~~~~~~~~~

**MEMORANDUM**

**I. INTRODUCTION**

      The matter before the Court is the Application for Compensation filed by David G. Baker, Esq. ("Attorney Baker"), former counsel to Andre T. Ridley (the "Debtor"), pursuant to which he seeks total compensation of $5,912.50, inclusive of a $2,500 retainer. The Debtor opposes the Application.

      The Court heard the matter on July 6, 2010. Both Attorney Baker and the Debtor testified, and the parties agreed that email communications attached to an affidavit submitted by the Debtor were admissible. Additionally, the Court ordered Attorney Baker to produce a copy of his fee agreement with the Debtor.

      The Court now makes its findings of fact and conclusions of law in accordance with Fed. R. Bankr. P. 7052.

1

## II. FACTS

A. <u>Procedural Background</u>

The Debtor filed a voluntary Chapter 13 petition on October 7, 2008.[1] Two weeks later, J. Alexander Watt, Esq. ("Attorney Watt") filed a Notice of Appearance on his behalf. On October 31, 2008, the Debtor filed a Chapter 13 Agreement between Attorney Watt and the Debtor, which reflected a promised payment to Attorney Watt of $2,500. Attorney Watt's Rule 2016(b) Statement reflected receipt of $1,800 with a balance due of $700, payable by the Debtor.

On October 31, 2008, the Debtor also filed his Schedules and Statement of Financial Affairs, and other required documents. On Schedule A-Real Property, he listed property located at 322 Winchendon Road, Ashburnham, Massachusetts (the "Winchendon Road property") with a value of $250,000, subject to a mortgage of $168,000. On November 10, 2008, Three M Realty Trust ("TMRT") filed a Motion for Relief from Stay with respect to the Winchendon Road property owned by the Debtor.[2] It previously had filed a proof of

---

[1] This is not the Debtor's first bankruptcy case. *See* Chapter 13 Case No. 04-42488 filed 05/03/2004; Chapter 13 Case No. 04-40861 filed 02/23/2004; Chapter 13 Case No. 03-17144 filed 08/22/2003; Chapter 7 Case No. 97-48545 filed 12/09/1997; Chapter 7 Case No. 88-11660 filed 09/09/1988. In filing his various bankruptcy petitions, the Debtor changed addresses permitting him to file both in the Western Division and the Eastern Division of the United States Bankruptcy Court for the District of Massachusetts.

[2] The Court takes judicial notice that The Church with the Good News, Inc. formerly owned the property, *see* <u>In re The Church with the Good News, Inc.</u>, No. 98-12605-JNF, and that the Debtor did not list an ownership interest in the Winchendon Road property in his prior Chapter 13 bankruptcy case, namely Case No. 04-42488, in which he received a discharge on March 14, 2008. It is undisputed that on September

a secured claim in the sum of $170,000 with respect to the Winchendon Road property to which it attached a Forbearance Agreement and an Allonge to Promissory Note, both dated November 7, 2002.

On January 22, 2009, following the allowance of a number of motions to continue, the Court heard TMRT's Motion for Relief from the Automatic Stay. The Court took the motion under advisement and ordered the Debtor to file an affidavit setting forth the payments he made with respect to the mortgage debt supported by copies of canceled checks and an accounting. On January 30, 2009, the Debtor filed an affidavit in which he represented, among other things, that he and The Church with the Good News, Inc. executed a promissory note to First Service Bank for Savings in the principal amount of $100,000 on July 24, 2987 "secured by a mortgage given by the Church on property owned by the Church in Ashburnham, MA. . . ." He also represented that in October of 1997 his ex-wife purchased the note and mortgage from the FDIC for $80,000 and then transferred the note and mortgage to TMRT; that in November of 2002, he, The Church with the Good News, Inc., and TMRT entered into a forbearance agreement pursuant to which he and The Church with the Good News, Inc. would make monthly payments of $4,134 to TMRT; that Kevin Kennedy, a certified public accountant was engaged to analyze allocation of payments made by The Church with the Good News, Inc. "with only an assumed principal balance of $90,11.60;" and that TMRT had been overpaid. The Debtor concluded that

---

24, 2008, The Church with the Good News, Inc. transferred the Winchendon Road property to its minister, the Debtor, for "ONE DOLLAR and other considerations."

"[b]ecause of this factual dispute, I want to initiate an adversary proceeding to finally have the court determine the debt owed. No court has yet determined this. . . ." TMRT filed a Response to the affidavit denying the Debtor's contentions.

On February 5, 2009, this Court denied TMRT's Motion for Relief from the Automatic Stay, finding that it had failed to demonstrate that it lacked adequate protection. The Court also directed the Debtor to file an objection to the proof of claim filed by TMRT. On February 23, 2009, just days before the Debtor objected to TMRT's claim, counsel to TMRT, Wendy Mead, Esq., withdrew her appearance. On March 13, 2009, Nicholas Katsonis, Esq. filed a Notice of Appearance on behalf of TMRT and shortly thereafter moved to dismiss the Debtor's Chapter 13 case on grounds that it was an abusive filing.

On May 7, 2009, the Court heard both TMRT's Motion to Dismiss and the Debtor's Objection to its proof of claim. The Court denied the Motion to Dismiss, issued an order requiring the completion of discovery in the contested matter involving "Debtor's Objection to Proof of Claim of Three M Realty Trust" on or before August 6, 2009 and the filing of a Joint Pretrial Memorandum by September 10, 2009. The Court scheduled a trial for September 17, 2009.

Approximately one month after the issuance of the pretrial order, on June 9, 2009, Attorney Baker filed a Notice of Appearance on behalf of the Debtor and an Amended Statement pursuant to Rule 2016(b), setting forth receipt of $2,500 from The Church with

4

the Good News, Inc.[3]  On July 9, 2009, Debra D. Lawler, Esq. ("Attorney Lawler"), filed a Notice of Appearance as "Of Counsel to the Law Office of David G. Baker."  Together with Attorney Katsonis, she filed "Parties' Certification as to Completion of the Rule 26(f) Conference."  Less than one month later, on July 31, 2009, Attorney Lawler filed a Notice of Withdrawal of Appearance.

On August 5, 2009, TMRT filed a Motion for Order to Show Cause, complaining that the Debtor had not served his Rule 26(a) disclosures.  The same day, Attorney Baker, on behalf of the Debtor, filed a Response. TMRT subsequently withdrew its Motion for Order to Show Cause.  On September 9, 2009, Attorney Baker filed an "Assented to Motion to Continue Trial and for Other Relief."  He represented that "in discussing the contents of the joint pre-trial memorandum, counsel for both parties concluded that as settlement discussions are ongoing, additional time may prove fruitful."  The Court granted the Motion and ordered the parties to file the Joint Pretrial Memorandum no later than December 15, 2009.

---

[3] On November 19, 2008, the Debtor filed an Application for Authority to Employ Robert H. Scarino ("Attorney Scarino") and the Law Offices of Dillon & Scarino "for the purpose of prosecuting an adversary action against Three M Realty Trust ("TMRT") to determine the amount due under a mortgage note held by TMRT."  The Debtor represented that he had agreed to compensate Attorney Scarino at the hourly rate of $250 and that his son, Thomas Ridley, had agreed to be responsible for any fees.  The Application was signed by Attorney Watt on behalf of the Debtor.  In an affidavit accompanying the Application, Attorney Scarino indicated that he had received $5,000 from Thomas Ridley as a retainer.  On January 7, 2009, the Court approved the retention of Attorney Scarino.  The Court is unaware of any services provided by Attorney Scarino or his firm.

On October 13, 2009, Jonathan R. Roth, Esq. and David M. Thomas, Esq. of Donovan Hatem LLP filed a "Request to be Allowed to Appear on Behalf of the debtor" for purposes of becoming lead counsel on the contested matter between Debtor and TMRT. Attorney Roth filed a Rule 2016(b) Statement in which he represented that his firm had received a deposit of $5,000 from the Church with the Good News, Inc. It is unclear whether the Debtor terminated Attorney Baker before engaging Attorney Roth or whether Attorney Baker, as will be discussed below, became ill and informally withdrew as counsel.

On December 3, 2009, Attorney Katsonis moved both to withdraw as counsel to TMRT and to continue the trial on grounds that he had accepted employment with the FDIC.

On February 25, 2010, the Court conducted a status conference, as well as a hearing on the Debtor's Motion for Discovery in which Attorney Roth stated that prior counsel for both the Debtor and TMRT did not take any discovery and that the Debtor "continually asked his prior counsel to take discovery and replaced prior counsel due to lack of communication and his failure to take any discovery." At the conclusion of the hearing, the Court indicated that it would issue a new pretrial order. On the same day, the Court issued a pretrial order, requiring the completion of discovery by May 28, 2010 and the filing of the Joint Pretrial Memorandum by June 15, 2010.

One month later, on March 25, 2010, the Debtor and TMRT filed a "Stipulation and Settlement Agreement" pursuant to which the parties agreed, *inter alia,* that upon the payment of $12,500 by The Church with the Good News, Inc., TMRT would discharge its

mortgage on he Winchendon Road property. The Court approved the settlement on May 4, 2010.[4] At the July 6, 2010 hearing, there was no dispute that neither Attorney Roth nor his firm conducted any discovery on behalf of the Debtor.

B. Attorney Baker's Application for Compensation

Attorney Baker attached to his Application a Letter Agreement dated June 5, 2009. The letter agreement, which was executed by both Attorney Baker and the Debtor, provided in pertinent part the following:

> In essence, you filed a chapter 13 case with another attorney in order to resolve problems arising from property in Ashburnam [sic] that is related to your ministry for The Church with the Good News. In essence, your ex-wife claims that you owe her $170,000 on a mortgage originally given to someone else but now allegedly held by Three M Realty Trust, and you dispute the amount owed.
>
> You have agreed to pay me a [sic] initial fee of $2,500. You have also agreed to pay my total fee, calculated at the rate of $275 per hour, plus reasonable expenses such as parking, copying or postage. While my final fee is subject to court approval, I will submit statements periodically or when you request one, and I ask that you pay them as soon as possible after receipt. In general, I will keep you informed about progress and I ask that you keep me informed of anything that may affect your case, such as any letters you receive from anyone that pertains to your case.
>
> Your goal is to obtain a ruling that you owe nothing on the mortgage, or that the actual amount owed is significantly less than claimed. . . .

Through his Application, Attorney Baker sought compensation in the total sum of $5,912.50 calculated by multiplying the total number of hours (21.50) by his hourly rate of

---

[4] The Court notes that following approval of the Settlement, the Debtor amended Schedule F to add National Grid as an unsecured creditor with a claim of $6,760.90. That claim is not dischargeable because of the Debtor's prior discharge on March 14, 2008. *See* 11 U.S.C. § 1328(f)(2).

$275. At the evidentiary hearing, Attorney Baker agreed to reduce his fee by $110 for two charges of $55 each which were incurred on December 13, 2009 and January 22, 2010.

Attorney Baker supported his fee request with detailed time sheets.[5] The time sheets

---

[5] The most substantial charges include the following:

June 5, 2009 - - $412.50 for "Office meeting with client and daughter to review case and documents."

June 15, 2009 - - $632.50 for "Review of CD documents provided by client, index them and general review of all documents."

June 16, 2009 - - $632.50 for "Obtain and review schedules and statements, objection to claim, response to objection, chapter 13 plan, etc.; George Mezhir's bankruptcy case; Chapter 11 case of Church With the Good News

July 10, 2009 - - $495 for "Review atty Katsonis' draft of Rule 26(f) Certification, submit proposed changes."

July 31, 2009 - - $110 for "Conversation with atty. Katsonis re rescheduling trial; prepare and file assented to motion to continue."

July 31, 2009 - - $330 for "Review file and prepare automatic disclosures per Rule 7026."

August 5, 2009 - -$220 for "Review motion for order to show cause and prepare and file response to motion; review 3M's automatic disclosures."

August 5, 2009 - - $577.50 for "Further review of documents provided on CD by client, including client's 1997 and 2004 bankruptcy cases. Research Westlaw for decisions in prior cases, including Church With the Good News."

November 3, 2009 - -$440 for "Review file preparatory to returning to client; arrange for copies to be made for my file of certain documents; met with atty. Kitaeff (in hospital) to discuss him returning it to client for me."

April 17, 2010 - - $467.50 for "Review file, edit time sheet & prepare fee

reflect no charges for Attorney Lawler's involvement in the case. Attorney Baker stated that while objections to claims are ordinarily relatively straightforward, "the objection in this case was rendered highly complex by the fact that the debtor has been litigating, in some sense of the word, the validity of the Trust's claim for many years." He added:

> In conversations with the debtor, it was made clear that he wanted the matter taken to trial and that numerous depositions were to be taken in preparation for that; he was not receptive to suggestions about settlement. Given that and the extremely voluminous nature of the prior bankruptcy cases and litigation history, I felt that I first needed to thoroughly review all of the prior matters to ascertain whether any issues of *res judicata* or collateral estoppel were present, which consumed a considerable amount of time. On the other hand, I felt that the number of depositions desired by the debtor were unnecessary, as a matter of strategy and as a matter of reducing costs, which appeared to have been substantial to date.

Attorney Baker also noted in his Application that he became ill and was hospitalized for ten weeks in the fall of 2009.

The Debtor objected to the Application. He stated: "I as a Debtor did not have the obligation to pay him and the Church is the one who had the money to pay him." He added that "I repeatedly tried to communicate with Attorney Baker but to no avail." The Debtor also complained that Attorney Baker "had taken our money and gave nothing in return."

---

application."

May 17, 2010 - - $412.50 for "Estimate time responding to objection to fee application, hearing in court on fee application."

Other charges pertained to communications with the client, with counsel to The Church with the Good News, Inc. or with the court to obtain the PACER docket.

The emails which the parties agreed the Court could review establish that the Debtor, using his daughter's email account, or his daughter sent Attorney Baker and Attorney Lawler numerous emails,[6] including one setting forth a list of eight individuals whom the Debtor believed should be deposed, including attorneys who had represented TMRT, the Debtor's ex-wife, and Charles Devons, the FDIC specialist who authorized the settlement of the note in 1997.  In addition, the Debtor sent Attorney Baker emails from the following email account:  andrepierre2008@gmail.com. The Court's review of the emails reflects that either Attorney Baker or Attorney Lawler responded to most of them and did not necessarily charge for their time in doing so.  In view of the exchange of emails, the Court unequivocally rejects the Debtor's belated assertion that he did not execute the letter agreement dated June 5, 2009 with Attorney Baker.

**III. DISCUSSION**

A. <u>Fee Award Standard</u>

Section 330(a)(4)(B) provides:

> In a chapter 12 or chapter 13 case in which the debtor is an individual, the court may allow reasonable compensation to the debtor's attorney for representing the interests of the debtor in connection with the bankruptcy case based on a consideration of the benefit and necessity of such services to the debtor and the other factors set forth in this section.

11 U.S.C. § 330(a)(4)(B).  The "other factors" are listed in § 330(a)(3) and include the following:

---

[6] Emails were sent on June 18, 2009, June 29, 2009, July 6, 2009, July 7, 2009, July 9, 2009, July 14, 2009, July 16, 2009, July 21, 2009, and July 24, 2009.

  (A) the time spent on such services;

  (B) the rates charged for such services;

  (C) whether the services were necessary to the administration of, or beneficial at the time at which the service was rendered toward the completion of [the case];

  (D) whether the services were performed within a reasonable amount of time commensurate with the complexity, importance, and nature of the problem, issue, or task addressed;

  (E) with respect to a professional person, whether the person is board certified or has otherwise demonstrated skill and experience in the bankruptcy field; and

  (F) whether the compensation is reasonable based on the customary compensation charged by comparably skilled practitioners in cases other than cases under this title.

11 U.S.C.A. § 330(a)(3)(A)-(F).

  In In re Argento, 282 B.R. 108 (Bankr. D. Mass. 2002), the court observed" "[u]nlike cases under chapter 7 or 11, the standard of reasonableness in a case under chapter 13 or under chapter 12 is based upon "the benefit and necessity of such service to the debtor" as well as 'other factors set forth" in section 330.'" Id. at 116.  The court added: "Therefore a Chapter 13 'debtor's counsel is entitled to an administrative expense for compensation for work that is beneficial and necessary to the debtor without proof of benefit or necessity to the Chapter 13 estate or the creditors.'" Id. (citing 3 Keith M. Lundin, Chapter 13 Bankruptcy § 294.1 (3d ed.2000), and In re Famisaran, 224 B.R. 886, 898 (Bankr. N.D. Ill. 1998)).

  In Argento, the court noted that "'[t]he most useful starting point for determining

11

the amount of a reasonable fee is the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate." This approach is commonly known as the lodestar method. . . .'" Id. (citing Hensley v. Eckerhart, 461 U.S. 424, 433 (1983). *See also* In re Eliapo, 468 F.3d 592, 598 (9th Cir. 2006) ("The customary method for assessing an attorney's fee application in bankruptcy is the 'lodestar,' under which 'the number of hours reasonably expended' is multiplied by 'a reasonable hourly rate' for the person providing the services.").

B. Analysis

Applying the lodestar method and considering the Debtor's Objection, the Court finds that Attorney Baker's fees are reasonable under the circumstances. The number of hours for which Attorney Baker seeks compensation, approximately 21, and his hourly rate are reasonable, particularly in view of Attorney Baker's experience as counsel to debtors in Chapter 13 cases. Upon review of Attorney Baker's Application and upon consideration of his testimony in which he withdrew his requests for compensation for services performed on December 3, 2009 and January 22, 2010, the Court shall award Attorney Baker total fees, inclusive of the $2,500 retainer, of $5,802.50. In this regard, the Court notes that Attorney Baker estimated his time for one court appearance when in fact he was required to appear on June 10, 2010 and to testify at a further hearing on July 6, 2010.

Although Attorney Baker became ill and was not able to resolve the Debtor's Objection to TMRT's proof of claim, several factors compel the Court to overrule the Debtor's Objection to Attorney Baker's fees. In the first place, the matter for which

12

Attorney Baker was retained had a long and complex history. Attorney Baker was ethically obligated to ascertain whether issues of res judicata or collateral estoppel pertained to TMRT's claim in view of the numerous bankruptcy cases filed by both the Debtor and The Church with the Good News, Inc. Federal Rule of Bankruptcy Procedure 9011(b) requires attorneys to refrain from presenting pleadings, motions or other documents to the Court for any improper purpose. Claims, defenses, and other legal contentions must be warranted by existing law and have evidentiary support. Before Attorney Baker could proceed, he was required to understand what had transpired in earlier cases, both in the bankruptcy court and in the state court. His failure to do so could have subjected him to sanctions.

Although Attorney Baker was not able to resolve the matter with TMRT before he withdrew from the case, that circumstance cannot be determinative of his entitlement to compensation. This Court's review of the email exchanges suggests that had Attorney Baker aggressively conducted the discovery requested by the Debtor his fees would far exceed his present request. Finally, the Debtor argued that Attorney Roth charged the Church $10,000 "to straighten out the mess caused by Attorney Baker." The Court rejects that contention. The complexity of the factual and legal issues surrounding the Objection to TMRT's proof of claim was not caused by Attorney Baker. Moreover, when the matter was finally resolved, it was not the result of extensive discovery or the deposition of the numerous parties identified by the Debtor, as the Debtor admitted that Attorney Roth did not conduct any discovery.

IV. CONCLUSION

In view of the forgoing, the Court overrules the Debtor's Objection to Attorney Baker's Application for Compensation. The Debtor is obligated to pay the balance of Attorney Baker's administrative claim in the sum of $3,302.50. The Debtor shall file an amended Chapter 13 plan to provide for the payment of Attorney Baker's fees, as well as all other claims to which no objections have been filed, within 30 days of the date of this order.[7]

By the Court,

*Joan N. Feeney*

Joan N. Feeney
United States Bankruptcy Judge

Dated: August 4, 2010
cc: David G. Baker, Esq., J. Alexander Watt, Esq., Jonathan R. Roth, Esq., Carolyn Bankowski, Esq.

---

[7] The City of Boston filed a proof of claim in the total amount of $66,166.97 and the Massachusetts Department of Revenue filed a proof of claim in the total amount of $5,950.30. *See* note 4, *infra.*