UNITED STATES BANKRUPTCY COURT
FOR THE
DISTRICT OF MASSACHUSETTS

~~~~~~~~~~~~~~~~~~~~~~~~~~~

In re
**ANDRE T. RIDLEY,**                                      Chapter 13
    Debtor                                               Case No. 08-17589-JNF

~~~~~~~~~~~~~~~~~~~~~~~~~~~

**MEMORANDUM**

**I. INTRODUCTION**

The matter before the Court is the Debtor's Objection to the Amended Proof of Claim filed by the City of Boston (the "City") pursuant to which the City asserts a secured claim in the amount of $66,166.97 with respect to delinquent real estate taxes for fiscal years beginning in and subsequent to 2004; delinquent water and sewer charges committed as a tax pursuant to Mass. Gen. Laws ch. 40, § 42C prior to fiscal year 2001; and delinquent building raze charges committed as a tax pursuant to Mass. Gen. Laws ch. 139, § 3A for the demolition of a structure located at 48 Amory Street, Boston, Massachusetts in 1998. The taxes and charges relate to 48 Amory Street, property formerly owned by The Church with the Good News, Inc. (the "Church"). The property is now owned by Andre T. Ridley, the Church's pastor and the Chapter 13 Debtor (the "Debtor"). The City in its Amended Proof of Claim valued the property at $49,400.00.

The Court heard the Debtor's Objection and the City's Response on January 7, 2011. At the conclusion of the hearing, the Court ordered the City to file a brief addressing the

1

following issues: (1) Whether the tax exempt status of the Church, which the Court determined and set forth in its Memorandum and Order dated October 15, 2001 in the Church's Chapter 11 case (Case No. 98-12605), *see* In re The Church with the Good News, Inc., No. 98-12605-JNF, slip op. (Bankr. D. Mass. Oct. 15, 2001), affects the City's ability to collect water and sewer charges and demolition costs against the Debtor and his property located at 48 Amory Street as set forth in the City's Amended Proof of Claim; (2) What meaning should be ascribed to the clauses set forth in Mass. Gen. Laws ch. 40, § 42C and Mass. Gen. Laws ch. 139, § 3A, i.e., the clauses which contain the language "such rate or charge [or such debt] shall be committed as the tax;" and (3) Whether the Memorandum and Order dated October 15, 2001 have res judicata and/or collateral estoppel effect with respect to the building raze fees and the water and sewer charges asserted by the City in its Amended Proof of Claim.

The City filed a thorough, 21-page brief in response to the Court's order. The Debtor, appearing pro se, filed a "Motion to Clarify the Record and Answer the Courts [sic] Question" in which he asserted that the properties in Boston which were the subject of the Court's October 15, 2001 Memorandum, including 48 Amory Street, are being used for Church purposes to this day. The Debtor admitted, however, that the Church has been paying real estate taxes for 48 Amory Street since 2001. Neither the Church nor the Debtor submitted evidence that a claim with the City for an abatement of those post-2001 real estate taxes had ever been filed, *see* Mass. Gen. Laws ch. 59, § 59, or that a claim for an abatement of the charges "committed as the tax" had ever been filed.

The material facts necessary to resolve the Debtor's Objection to the City's Amended Proof of Claim are not in dispute, and the parties attached pertinent documents to their pleadings. Neither the Debtor nor the City requested an evidentiary hearing.

This Court has core jurisdiction pursuant to 28 U.S.C. §§ 157(b)(2)(B) and 1334(b) to determine the Debtor's Objection to the City's Amended Proof of Claim. The Court now makes its findings of fact and conclusions of law in accordance with Fed. R. Bankr. P. 7052.

## II. FACTS

The Debtor filed a voluntary Chapter 13 petition on October 7, 2008. On Schedule A-Real Property, he listed an ownership interest in real property located at 48 Amory Street, Boston which he valued at $57,900.00. The Debtor acquired his ownership interest in 48 Amory Street from the Church on October 6, 2008 by Quitclaim Deed, one day before he commenced his Chapter 13 case.

Approximately ten years ago, on March 18, 1998, the Church filed a petition under Chapter 11 of the Bankruptcy Code. As noted above, during the course of that case, which was dismissed on September 24, 2002, this Court, following a trial at which two witnesses testified and 33 exhibits were accepted into evidence, issued a Memorandum and Order on October 15, 2001 with respect to a "Motion to Determine Tax Liability" filed by the Church. The Motion to Determine Tax Liability, which the Church filed on or around November 19, 1999, contained the following prayer for relief:

> WHEREFORE, the Church with the Good News, Inc. respectfully requests entry of an order declaring the Properties [including 48 Amory Street] to be exempt from property taxes, or in the alternative, fixing the taxes on the

3

>    Properties as their allowable amount, and such other order and further relief as justice may require.

In its motion, the Church cited, and relied only upon, Mass. Gen. Laws ch. 59. Following the filing of the Motion to Determine Tax Liability, the Court, on January 24, 2000, in connection with a Motion to Dismiss filed by Three M Realty Trust and other matters, *sua sponte*, appointed a Chapter 11 Trustee. The Chapter 11 Trustee pursued the Debtor's Motion to Determine Tax Liability.

The Court in its Memorandum cited Mass. Gen. Laws ch. 59, § 5, cl. 10, 11, but not Mass. Gen. Laws ch. 40, § 42C or Mass. Gen. Laws ch. 139, § 3A. The Court determined that "the Trustee has sustained his burden of demonstrating that the properties were used for religious purposes and that the Debtor's inability to use the properties as intended does not preclude its entitlement to an exemption." In re The Church with the Good News, Inc., No. 98-12605-JNF, slip op. at 28. The Court's Order reiterated the conclusion set forth in the Memorandum, namely that "the Debtor is entitled to an exemption from *real estate taxes* for the properties known as 48 Amory Street, Amory Street [sic] and 1599 Columbus Avenue, except for the 2001 tax year." (emphasis supplied).

The Court in its 2001 decision noted that "[a]ccording to the City, the Church owes $74,788.49 in delinquent real estate taxes, of which $33,185.78 is attributable to interest and $15,999.00 is attributable to the cost of demolishing the building." The Court, however, neither addressed nor determined whether the Church was liable for delinquent water and sewer charges for the period prior to 2001 or the building raze costs of $15,999.000 for

4

demolishing the building located at 48 Amory Street. Indeed, the parties recognized the absence of such a determination because on August 2, 2004, they filed a "Joint Motion for Clarification." In that motion, which the Court denied on September 8, 2004 because the case was closed and had not been reopened, the parties requested the Court to:

> clarify and state whether the City is required pursuant to the Memorandum of the Court dated October 15, 2001 to abate either or both of (i) the pre-petition delinquent water and sewer charges outstanding on the 48 Amory Street parcel, and (ii) the pre-petition charges incurred by the City's Inspectional Services Department relating to the razing of a building situated upon the 48 Amory Street parcel, and any fees or accrued interest relating to each.

Although the Court denied the parties' Joint Motion to Clarify in 2004, the Debtor's Objection to the City's Amended Proof of Claim raises the same issue, namely whether the status of The Church with the Good News, Inc. as exempt from taxation under Mass. Gen. Laws ch. 59, § 5 cl. 11 extends to delinquent water and sewer charges and building raze costs encumbering 48 Amory Street, now owned by the Debtor.

### III. APPLICABLE LAW

If an owner of a building or structure fails to demolish or remove "any burnt, dangerous or dilapidated building or structure" or if that owner fails to secure any vacant parcel of land from a trespass,

> a claim for the expense of such demolition or removal, including the cost of leveling the lot to uniform grade by a proper sanitary fill, or securing such vacant parcel *shall constitute a debt* due the city or town upon the completion of demolition, removal, or securing and the rendering of an account therefor to the owner or his authorized agent, and shall be recoverable from such owner in an action of contract.

5

Mass. Gen. Laws ch. 139, § 3A (emphasis supplied). The statute further provides:

> Any such debt, together with interest thereon at the rate of six per cent per annum from the date such debt becomes due, *shall constitute a lien on the land upon which the structure is or was located* if a statement of claim, signed by the mayor or the board of selectmen, setting forth the amount claimed without interest is filed, within ninety days after the debt becomes due, with the register of deeds for record or registration, as the case may be, in the county or in the district, if the county is divided into districts, where the land lies. Such lien shall take effect upon the filing of the statement aforesaid and shall continue for two years from the first day of October next following the date of such filing. If the debt for which such a lien is in effect remains unpaid when the assessors are preparing a real estate tax list and warrant to be committed under section fifty-three of chapter fifty-nine, the mayor or the board of selectmen, or the town collector of taxes, if applicable under section thirty-eight A of chapter forty-one, shall certify such debt to the assessors, who shall forthwith add such debt to the tax on the property to which it relates and commit it with their warrant to the collector as part of such tax. *If the property to which such debt relates is tax exempt, such debt shall be committed as the tax.* Upon commitment as a tax or part of a tax, such debt shall be subject to the provisions of law relative to interest on the taxes of which they become, or, if the property were not tax exempt would become, a part; and the collector of taxes shall have the same powers and be subject to the same duties with respect to such debts as in the case of annual taxes upon real estate, and the provisions of law relative to the collection of such annual taxes, the sale or taking of land for the non-payment thereof, and the redemption of land so sold or taken shall, except as otherwise provided, apply to such claims. A lien under this section may be discharged by filing with the register of deeds for record or registration, as the case may be, in the county or in the district, if the county is divided into districts, where the land lies, a certificate from the collector of the city or town that the debt constituting the lien, together with any interest and costs thereon, has been paid or legally abated. All costs of recording or discharging a lien under this section shall be borne by the owner of the property.

Id. (emphasis supplied).

A similar provision applies to water and sewer charges:

> *If a rate or charge for which a lien is in effect* under section forty-two B has not been added to or committed as a tax and remains unpaid when the assessors

are preparing a real estate tax list and warrant to be committed by them under section fifty-three of chapter fifty-nine, the board or officer in charge of the water department, or the town collector of taxes, if applicable under section thirty-eight A of chapter forty-one, shall certify such rate or charge to the assessors, who shall forthwith add such rate or charge to the tax on the property to which it relates and commit it with their warrant to the collector of taxes as a part of such tax. *If the property to which such rate or charge relates is tax exempt, such rate or charge shall be committed as the tax.*

Mass. Gen. Laws ch. 40 § 42C (emphasis supplied).

### IV. DISCUSSION

Addressing the last issue posed by the Court at the January 7, 2011 hearing, namely whether the Court's decision of October 15, 2001 has either collateral estoppel or res judicata effect, the Court finds that it does not. In Blacksmith Investments, Inc. v. Woodford (In re Woodford), 418 B.R. 644 (B.A.P. 1st Cir. 2010), the United States Bankruptcy Appellate Panel for the First Circuit stated:

> The doctrine of collateral estoppel "prevents relitigation of an issue determined in an earlier action where the same issue arises in a later action, based on a different claim, between the same parties or their privies." Kobrin [v. Bd. of Registration in Med.], 832 N.E.2d [837] at 634 [(Mass. 2005)] (quoting Heacock v. Heacock, 402 Mass. 21, 520 N.E.2d 151, 152 (1988)); *see also* Jarosz v. Palmer, 436 Mass. 526, 766 N.E.2d 482, 487 (2002). To apply the doctrine, the court must determine that: (1) there was a final judgment on the merits in the prior litigation; (2) the party against whom preclusion is asserted was a party (or in privity with a party) to the prior litigation; and (3) the issue in the prior litigation was identical to the issue in the current litigation. Kobrin, 832 N.E.2d at 634 (citing Tuper v. North Adams Ambulance Serv., Inc., 428 Mass. 132, 697 N.E.2d 983 (1998)). In addition, the issue in the prior litigation must have been essential to the earlier judgment. Id.; *see also* Alba v. Raytheon Co., 441 Mass. 836, 809 N.E.2d 516, 521 (2004) (citations omitted). Issue preclusion can be used only to prevent relitigation of issues actually litigated in the prior action. Kobrin, 832 N.E.2d at 634. The material issue in this case arises out of an agreement for judgment, and therefore, there is no question that it was not actually litigated in the sense

of a hearing or trial.

In re Woodford, 418 B.R. at 551. Because the Court did not specifically address either water and sewer charges or building raze fees assessed against the property located at 48 Amory Street in its Memorandum dated October 15, 2001, the Court finds that the issue of the Church's liability for those charges was not actually litigated and the doctrine of collateral estoppel does not resolve the Debtor's Objection to the City's Amended Proof of Claim. Id. Similarly, res judicata or claim preclusion as one of its elements requires a valid, final judgment on the merits. Id. at 550 (setting forth the elements for application of res judicata). There was no valid and binding final judgment on the merits with respect to the City's claim for water and sewer charges and building raze charges in the October 15th Memorandum. Id. Accordingly, res judicata does not require this Court to sustain the Debtor's Objection to the City's Amended Proof of Claim.

With respect to the remaining issues, the City, in effect, argues that sections 3A and 42C of chapters 139 and 40, respectively, create exemptions to an exemption for "houses of religious worship owned by . . . any religious organization" as set forth in Mass. Gen. Laws ch. 59, § 5, cl. 11. In other words, the City distinguishes between exemption from taxes *assessed* upon property identified in Mass. Gen. Laws ch. 59, § 5 and the *commitment* of delinquent charges to the tax rolls for collection, adding that properties that are entitled to an exemption from Chapter 59 assessments remain subject to the commitment of delinquent charges "as *the* tax." The City adds that delinquent water charges are established as liens pursuant to Mass. Gen. Laws ch. 40, § 42B, and that a water lien is not

8

a tax but a charge upon which a water lien is based. It asserts that building raze charges are similar in that they are established as liens and are committed to the tax collector pursuant to Mass. Gen. Laws ch. 139, § 3A.

Citing, *inter alia* City of Boston v. DuWors, 340 Mass. 402, 403 (Mass. 1960), and the Massachusetts Collectors and Treasurers Association Collector's Manual (Rev. 2008), *see* http://mcta.virtualtownhall.net/pages/MCTA_CollectorsManual/index., the City states:

> . . . "Once the municipal charges lien has been approved for a particular type of charge or fee, a lien is formally established by the filing of a list of such unpaid charges by the parcel of land and by the name of the person assessed at the registry of deeds. After the lien has been established, the unpaid charge or fee may be certified to the board of assessors to be added to the real estate tax bill for collection. *If the property is tax exempt, such charge or fee is committed as the tax.*" Id. [Collectors Manual] at p. 96. (Emphasis added).
>
> . . . The meaning of the clause "such debt shall be committed as the tax" as set forth in M.G.L. ch, 139 § 3A and the clause "such rate or charge shall be committed as the tax" as set forth in M.G.L. ch. 40 § 42C describes the administrative process enumerated in M.G.L. ch. 59 § 53, whereby, "[t]he assessors shall, within a reasonable time, commit the tax list with their warrant to the collector of taxes. . ." The real estate tax commitment that is prepared by the assessor is a list of parcels that specifies for each parcel the amount of the tax due and the name and address of the person liable for the tax. The warrant that accompanies the commitment provides the collector with the necessary authority to collect the taxes scheduled in the commitment. Once certified to the assessor in the manner described in M.G.L. ch. 40 § 42C and M.G.L. ch, 139 § 3A, delinquent water and sewer charges, and delinquent building raze charges, respectively, are added by the assessors to the tax list which they then commit with their warrant to the collector as required by M.G.L. ch. 59 § 53.

Pursuant to this process, charges for property which may be exempt from real estate taxes may be "committed as the tax" if the property is exempt from taxation.

Water and sewer charges and building raze costs relate to the consumption of

9

resources and services, unlike the ministerial assessment of property taxes based upon the valuation of the property and the tax rate. As the Supreme Judicial Court observed approximately 170 yeas ago,

> Taxes are those proportional and reasonable assessments and duties which may, by virtue of the constitution, be imposed from time to time, by the General Court, upon the inhabitants of the Commonwealth, for the necessary defence and support of the government, and for the protection and preservation of the rights, and to promote the interests, of the people. They do not partake of the nature of judgments. The imposition and collection of them are ministerial acts, and are the proper subjects of inquiry, as to the manner of their assessment and the mode of their enforcement, in the judicial forum; and for the collection of them, no right of action is given, (with a few special exceptions, growing out of the death of parties, or their removal out of the collector's precinct, or on the marriage of females,) nor can they be turned into judgments. Nor are taxes contracts between party and party, either express or implied; but they are the positive acts of the government through its various agents, binding upon the inhabitants, and to the making or enforcing of which their personal consent, individually, is not required.

Peirce v. City of Boston, 3 Metcalf 520, 44 Mass. 520, 521 (1842). The Massachusetts legislature exempted property from taxation. It did not exempt property from liability for water and sewer charges and the cost of demolishing unsafe buildings. The use of the water and sewer pipes, the consumption of water, and the costs of demolishing unsafe buildings do not give rise to a tax. The manner in which a governmental unit collects the costs associated with the consumption of resources or the use of services through a commitment to the collector does not transmute the charges into a tax, although their collection may be facilitated by their commitment as the tax.

**V. CONCLUSION**

For the reasons set forth above, the Court overrules the Debtor's objection to the

amended proof of claim filed by the City of Boston. The Court finds that the Debtor is liable for water and sewer charges totaling $1,260.96; for real estate taxes totaling $10,316.12 and for the building raze fee plus interest of $32,223.40 ( $15,999.00 + $15172.67) as set forth in the City's Amended Proof of Claim. Because this Court is unable, based upon the documentation attached to the City's Amended Proof of Claim, to reconcile the actual charges and taxes with the total amount of the claim in the amount of $66,166.97, the Court shall order the City of Boston file an accounting to substantiate its total claim. Further, in view of the value ascribed to the property located at 48 Amory Street, i.e., $49,400 by the City and $57,900 by the Debtor, the Court shall order the City to show cause why any sum owed to it in excess of the value of the property should not be determined to be an unsecured claim. *See* 11 U.S.C. § 506(a).

By the Court,

Joan N. Feeney
United States Bankruptcy Judge

Dated: February 23, 2011